# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN WEEKS, an individual doing business as K&W SALES; and KING FRESH PRODUCE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Fresh-Pic PRODUCE COMPANY, INC., a California corporation; FRANK AVILA, an individual; KARINA SAUCEDO, an individual; FRESH CUT PRODUCE COMPANY, a corporation; ROBERTO SALINAS, an individual; MICHAEL A. ALMANZA, individual and doing business as PURA VIDA,<br><br>Defendants. | Case No. 08cv02058 BTM (WVG)<br><br>**ORDER RE MOTION FOR RECONSIDERATION** |

On July 25, 2011, the Court entered an order (1) denying Plaintiffs' motion for summary judgment against Defendants Fresh-Pic Produce Company ("Fresh-Pic"), Frank Avila, Karina Saucedo, and Michael A. Almanza (individually and doing business as Pura Vida); and (2) denying Plaintiffs' motion for default judgment against Defendants Fresh Cut Produce Company ("Fresh Cut") and Roberto Salinas. On August 22, 2011, Plaintiffs timely filed a motion for reconsideration of the July 25, 2011 order. See S.D. Cal. Civ. L.R. 7.1(i)(2). For the reasons set forth herein, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for reconsideration.

Local Rule 7.1 provides that "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part," a party may bring a motion or application for reconsideration based on a showing of "new or different facts and circumstances [that] are claimed to exist which did not exist, or were not shown, upon such prior application." S.D. Cal. Civ. L.R. 7.1(i)(1).

The Court presumes the parties' familiarity with the facts.

I.  Motion for Summary Judgment

In their original motion for summary judgment, Plaintiffs claimed that Defendants Fresh-Pic, Frank Avila, Karina Saucedo, and Michael A. Almanza (individually and doing business as Pura Vida) (collectively, the "SJ Defendants") failed and refused to pay Plaintiffs for perishable agricultural commodities received by the SJ Defendants in 2008. Plaintiffs also claimed that the entire amounts owed are protected by the statutory trust provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*

In the July 25, 2011 order, the Court explained that a PACA claimant must establish five elements to recover for unpaid accounts under the PACA statutory trust provisions: (1) the produce in question are "perishable agricultural commodities"; (2) the produce were received by a commission merchant, dealer, or broker; (3) the transaction occurred in contemplation of interstate or foreign commerce; (4) the purchaser failed to pay fully and promptly; and (5) the seller preserved its trust rights by including statutory language referencing the trust on its invoices. (Dkt. No. 68 at 5 (citing C & G Farms, Inc. v. Capstone Bus. Credit, LLC, No. CV F 09-0032, 2011 WL 677487, at *5-8 (E.D. Cal. Feb 17, 2011)).) The Court concluded in the July 25, 2011 order that Plaintiffs had established each of these elements except that the transactions occurred in contemplation of interstate or foreign commerce. See Order dated July 25, 2011, at 5-6 & n.1 (Dkt. No. 68).

Under PACA, a transaction implicates "interstate or foreign commerce" if commodities transported pursuant to that transaction originate in one state (or foreign country) with the

expectation that they will end their transit, after purchase, in another. 7 U.S.C. § 499a(b)(8). This language is deliberately broad, and a PACA plaintiff does not have to prove that the produce actually crossed state lines. C & G Farms, 2011 WL 677487, at *8 (citing In re Southland + Keystone, 132 B.R. 632, 640-41 (B.A.P. 9th Cir. Cal. 1991). The court in In re Southland + Keystone reasoned that PACA covered all transactions between a debtor and a seller where "the commodities involved are the type typically sold in interstate commerce" and where the seller involved is "the type that congress intended to protect by implementing PACA." 132 B.R. at 641.

In its July 25, 2011 order, the Court denied summary judgment for Plaintiffs on the ground that they "fail[ed] to provide any evidence that Defendants acquired produce from out-of-state sources." (Dkt. No. 68 at 6.) In their motion for reconsideration, Plaintiffs have provided evidence that Defendant Fresh-Pic received a July 31, 2008 shipment from Plaintiff King Fresh Produce, LLC ("King Fresh") in Mexico (Dkt. No. 69-1 at 5 of 7),[1] and that Defendant Fresh-Pic received shipments from Plaintiff K&W Sales ("K&W") in California that were shipped from Arizona and Pennsylvania (Dkt. No. 69-2). Although Plaintiffs have not introduced any evidence proving that Defendants Fresh Cut and Pura Vida ever "acquired produce from out-of-state sources," Plaintiffs have established that Fresh Cut and Pura Vida were in the same line of business as Defendant Fresh-Pic and that the individual defendants responsible for managing Fresh-Pic were also responsible for managing Fresh Cut. (See Dkt. No. 57, Exs. 6-8.)

---

[1] On October 3, 2011, Defendant Michael Almanza filed a declaration (dated September 2, 2011) in opposition to Plaintiffs' motion for reconsideration, alleging (a) that "Puro Vida" (presumably Pura Vida), and not Fresh-Pic, received the July 31, 2008 shipment; (b) that the produce received in this shipment were "hot" (rotten); and (c) that a representative of King Fresh named "Renir" agreed to hold the shipping company, and not "Puro Vida," responsible for the price of the "hot" shipment. (See Dkt. No. 71.) As this declaration was filed ten days beyond the deadline for opposition papers to Plaintiffs' motion for reconsideration, the Court declines to consider it. See S.D. Cal. Civ. L.R. 7.1(e)(2), (f)(3)(C). Moreover, these statements contradict the plain language of each invoice submitted in support of Plaintiffs' summary judgment motion, and which was unchallenged at summary judgment. Additionally, these statements are not relevant to the issue presently before the Court, which is whether the July 31, 2008 shipment was involved in interstate commerce.

Under these circumstances, and in light of the broad standard for defining interstate transactions under PACA, the Court finds that Plaintiffs have established the requisite jurisdictional hook for all relevant transactions involving Defendants Fresh-Pic, Fresh Cut, and Pura Vida.  The Court therefore reverses its holding that Plaintiffs are not entitled to summary judgment on their PACA claims against Defendants Fresh-Pic, Frank Avila, Karina Saucedo, and Michael A. Almanza (individually and doing business as Pura Vida), and holds that Plaintiffs have established the elements of their damages claim under PACA.  See 7 U.S.C. §§ 499b and 499e(c)(1)-(4); Order dated July 25, 2011, at 5-6 & n.1 (Dkt. No. 68).

## II.     Motion for Default Judgment

In their original motion for a default judgment, Plaintiffs sought entry of a default judgment against Defendants Fresh Cut and Roberto Salinas (collectively, the "Default Defendants") in the amount of $375,683.71, plus attorneys' fees and costs and an award of prejudgment interest.  The amount sought is equal to the claims against the SJ Defendants, minus the claim against Defendant Michael A. Almanza (individually and doing business as Pura Vida), and arises out of the same transactions.  Presumably, Plaintiffs seek a judgment holding the Default Defendants jointly and severally liable with the SJ Defendants on the overlapping claims (as opposed to a double recovery).

In its July 25, 2011 order, the Court did not reach the merits of Plaintiffs' motion for a default judgment, because Plaintiffs had failed to establish that Defendant Fresh Cut was properly served.  (Dkt. No. 68 at 8.)   In their motion for reconsideration, Plaintiffs have overcome this defect.

Exhibit 1 to the Declaration of Bart M. Botta, filed in support of the motion for reconsideration, is a "Business Entity Detail" for Fresh Cut Produce Company, received from the official website for the California Secretary of State, naming "Robert Salinas" as the "Agent for Service of Process."  (Dkt. No. 69, at 6 of 7.)  Exhibit 2 is a printout from the U.S. Department of Agriculture's official website naming Roberto Salinas as the "Reported

Principal" for Fresh Cut Produce Company. (Id. at 7 of 7.) Notwithstanding the fact that the Business Entity Detail (Ex. 1) uses the name "Robert" (rather than "Roberto"), the Court finds that the exhibits attached to Mr. Botta's declaration sufficiently establish that Mr. Salinas is authorized to receive service of process for Fresh Cut.

Turning to the merits, the Court determines that Plaintiffs are entitled to a default judgment on their claims against Defendants Fresh Cut and Roberto Salinas. The Court considers the following factors when deciding whether or not to grant a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986). Out of these factors, only the policy favoring decisions on the merits weighs in favor of the Default Defendants.

As the Court has already held that Plaintiffs are valid PACA trust beneficiaries with respect to the transactions at issue in the motion for a default judgment, the only issue remaining that impacts the merits and sufficiency of the complaint against the Default Defendants is whether Plaintiffs have established the requisite ties between Fresh-Pic and the Default Defendants to make the Default Defendants jointly and severally liable for the amounts owed by Fresh-Pic. In evaluating these factors, the Court applies the principle that "[i]n determining liability and entry of default judgment, the general rule is that well-pleaded allegations in the complaint regarding liability are deemed true, except as to the amount of damages." Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).

The allegations in the First Amended Complaint are sufficient to establish that Fresh Cut is jointly and severally liable for Fresh-Pic's PACA liability. See Sunkist Growers, Inc. v. Fisher, 103 F.3d 280, 283 (9th Cir. 1997) ("PACA liability attaches first to the licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the

corporate trustee to commit the breach of trust." (citation and quotation marks omitted)). These include the allegations that Fresh Cut is the alter ego of Fresh-Pic, that Fresh Cut and Fresh-Pic were commonly operated, that they commingled funds, and that Fresh Cut began operating after Fresh-Pic's operating license was suspended by the USDA. Supporting these allegations are Defendant Fresh-Pic's admissions in its RFA responses that Roberto Salinas, the reported principal for Fresh Cut, is also the owner, CEO, and member of the board of directors of Fresh-Pic. (Dkt. No. 57-1, Ex. 11, at 77-78 of 125.) Plaintiffs' allegations and Fresh-Pic's admissions are also sufficient to establish Plaintiffs' claims against Roberto Salinas, since "[a]n individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." See Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705-06 (2d Cir. 2007) (collecting cases).

Under the circumstances presented, all but one remaining factor weighs in favor of Plaintiffs. See Moroccanoil, Inc. v. Allstate Beauty Products, Inc., --- F. Supp. 2d ---, 2012 WL 748776, at *1-3 (C.D. Cal. Mar. 2, 2012) (applying Eitel factors and entering default judgment in factually analogous case involving nonresponsive defendant). *First*, the possibility of prejudice to Plaintiffs is great, since litigation under PACA provides the only recourse to recover from the Default Defendants. *Second*, the sum of money that would be awarded is not unreasonable, since the SJ Defendants would be jointly and severally liable with the Default Defendants, and the total damages award that the Court is willing to entertain (discussed below in greater detail) pales in comparison to the three million dollars at issue in Eitel. Cf. United States v. Palomba, No. C 02-05009, 2003 WL 21804813, at *1 (N.D. Cal. Feb. 20, 2003) (entering default judgment in amount of $330,483.10 plus interest). *Third*, the default is not the result of excusable neglect, since the Default Defendants were served on July 18, 2010, and have yet to make an appearance in this case. *Fourth*, the possibility of a dispute as to material facts is remote because the Default Defendants have not defended themselves in this case and there is no indication that they intend to do so.
//

Finally, the "strong policy in favor of decisions on the merits" does not factor strongly in this case. "Although default judgment is disfavored, a decision on the merits is impractical, if not impossible, when the defendant takes no part in the action." Moroccanoil, 2012 WL 748776, at *3. Weakened and standing alone, the policy favoring decisions on the merits does not suffice to outweigh the six other factors, all of which militate in favor of default judgment.

III.   Damages

Notwithstanding the general unresponsiveness of the defendants in this case, the Court independently reviews the evidence submitted by Plaintiffs in support of their damages estimates. Id. ("While the allegations in a complaint are taken to be true for the purposes of default judgment, courts must make specific findings of fact in assessing damages."). In reviewing the invoices submitted by Plaintiffs, the Court has identified several discrepancies that warrant a departure from the requested damages.

First, Plaintiffs allege damages of at least $26,267.50 arising out of the transaction between Plaintiff King Fresh and Defendant Fresh-Pic, indicated on a July 31, 2008 invoice. (See Dkt. No. 69-1, Ex. 1; Dkt. No. 57-2, Ex. 1.) Upon review of this invoice, the Court determines that the actual value of this transaction is $24,227.50, since that amount is indicated in the "PLEASE PAY" field of the invoice, and that amount also equals the sum of the line item charges in the invoice. (Id.)[2] Consequently, the Court finds damages arising out of the July 31, 2008 transaction totaling $24,227.50.

Second, Plaintiffs allege that "between on or about April 29, 2008[,] and August 29, 2008, in a series of transactions, K&W sold and shipped perishable agricultural commodities

---

[2] The Court finds that the 2040.00-dollar difference between the alleged value of the transaction and the value indicated in the "PLEASE PAY" field probably is the result of an error in arithmetic resulting from the fact that the July 31, 2008 transaction involved *2040 boxes* of grapes. (Id.; see also Dkt. No. 69-1, Ex. 2 (July 31, 2008 Phytosanitary Certificate).)

1  to Fresh-Pic at Fresh-Pic's request for which Fresh-Pic agreed to pay the cumulative total
2  principal amount of $349,416.21." (Dkt. No. 57-4 at 7 of 21.) In support of this sum, Plaintiffs
3  cite to Exhibit 1 to the Declaration of Alan Weeks, which includes "[c]opies of K&W's invoices
4  confirming these sales to Defendant Fresh-Pic[.]"  (Dkt. No. 57-3 at ¶ 6.)

5  However, the Court's review of the invoices included in Exhibit 1 indicate a much lower
6  damages figure.  The sum total of the amounts stated on the face of the invoices in Exhibit
7  1 is only $314,001.40. (See generally id.) Additionally, nearly half the invoices in that Exhibit
8  list as the "recipient" either "Sun Terra," "King Fresh Produce, L.L.C.," or "Jacobs, Malcom
9  & Burtt"--*not* Fresh-Pic.  (Id.)  Plaintiffs have offered no explanation as to why invoices
10 documenting shipments made to these other recipients are relevant to calculating damages
11 in this action.  In fact, Sun Terra and Jacobs, Malcom & Burtt are not mentioned in the
12 moving papers at all, and King Fresh Produce, L.L.C. is mentioned only in its capacity as a
13 *plaintiff*. The sum total of the amounts stated on the face of the invoices naming Fresh-Pic
14 as the recipient is $181,008.20. (Id.) Consequently, the Court finds damages arising out of
15 the transactions between K&W and Fresh-Pic in the amount of $181.008.20.

16 Finally, Plaintiffs allege that "between on or about July 17, 2008[,] and August 18,
17 2008, in a series of transactions, Plaintiff K&W sold and shipped perishable agricultural
18 commodities to Defendant Pura Vida, for which Pura Vida agreed to pay Plaintiff K&W in
19 amounts at least as great as the principal sum of $61,236.50." (Dkt. No. 57-4 at 7-8 of 21.)
20 In support of this sum, Plaintiffs cite to Exhibit 2 to the Declaration of Alan Weeks, which
21 includes "[c]opies of K&W's invoices confirming these sales to Defendant Pura Vida[.]" (Dkt.
22 No. 57-3 at ¶ 7.) However, the Court's review of the invoices included in Exhibit 2 indicate
23 a sum total of only $37,914.80. (See generally id.) Consequently, the Court finds damages
24 arising out of the transactions between K&W and Pura Vida in the amount of $37,914.80.
25 //
26 //
27 //
28 //

IV. Attorneys Fees and Costs

Although an express statutory basis for attorneys' fees and costs does not exist under PACA, the clear language in invoices exchanged between parties in a PACA action can create the right to recover fees and costs. Middle Mountain Land and Produce Inc. v. Sound Commodities Inc., 307 F.3d 1220, 1225 (9th Cir. 2002); see also Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705-06 (2d Cir. 2007) (stating that "we agree with our sister circuits that where the parties' contracts include a right to attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA[,]" and awarding fees based on language contained in invoices).

The invoices sent by K&W to Fresh-Pic and Pura Vida all state:

> In the event any action or proceeding is commenced to enforce the terms of this transaction or to enforce the seller's PACA trust rights, the buyer agrees to pay all costs of enforcement, including all attorneys' fees, together with any costs and expenses, as additional sums owed in connection with this transaction.

(See Dkt. No. 57-3, Exs. 1 and 2.)  However, Plaintiffs have not differentiated between fees and costs incurred in prosecuting K&W's claims against Fresh-Pic, and those incurred prosecuting K&W's claims against Pura Vida.

The Court also notes that the July 31, 2008 invoice for $24,227.50, sent from King Fresh to Fresh-Pic, contains no language relating to attorneys' fees and costs. (See Dkt. No. 69-1, Ex. 1; Dkt. No. 57-2, Ex. 1.)  Where there is no contractual basis for the award of attorneys' fees and costs in a PACA action, and there are no other grounds for creating an exception to the "American Rule" against awarding fees to the prevailing party,[3] the Court does not have discretion to award fees and costs.

//

---

[3] Middle Mountain Land, 307 F.3d at 1225 (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257-59 (1975)) (noting that exceptions to the "American Rule" that permit fee-shifting in PACA cases include (1) statutory basis, (2) enforceable contract, (3) willful violation of court order, (4) bad faith action, and (5) litigation creating common fund for the benefit of others).

1       Accordingly, the Court declines to award attorneys' fees and costs at this time, and orders that the parties shall submit supplemental briefs addressing the issue of attorneys' fees and costs. Specifically, Plaintiffs shall submit evidence indicating which portion of the requested fees and costs are attributable to which Defendants, and Plaintiffs may also argue that certain Defendants should be jointly and severally liable for fees.

V.     Prejudgment Interest

      As with attorneys' fees and costs, PACA claimants can establish an entitlement to prejudgment interest on the basis of express language in an invoice. Id. at 1222-24. However, unlike attorneys' fees and costs, reasonable prejudgment interest may be awarded absent any contractual basis. Id. at 1226 (holding that an "award of reasonable prejudgment interest to PACA claimants . . . absent contract is discretionary").

      Where the contract between the parties creates a prejudgment interest rate of 18%, that interest rate applies. See Abbate Family Farms Ltd. Partnership v. P.Y. Produce LLC, No. C-11-00319, 2011 WL 7081569, at *4 (N.D. Cal. Nov. 22, 2011) ("Although normally interest would accrue at the legal rate, because the invoices created a contract, the interest rate of 18% on unpaid accounts agreed to by the parties is the correct rate to apply." (citing Citicorp Real Estate, Inc. v. Smith, 155 F.3d 1097, 1108 (9th Cir.1998))). However, absent contractual agreement, "the interest rate prescribed . . . under 28 U.S.C. § 1961 is appropriate for fixing the rate of prejudgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." Nelson v. EG & G Energy Measurements Group, Inc., 37 F.3d 1384, 1391 (9th Cir.1994) (citation and quotation marks omitted).

      The invoices sent by K&W to Fresh-Pic and Pura Vida all state:

> FINANCE CHARGES will accrue on any past-due balance at the rate of 1 1/2% per month (18% per annum) from the date each invoice becomes past due, or the maximum rate of interest allowable by law, and will be computed daily and compounded annually.

(See Dkt. No. 57-3, Exs. 1 and 2.)  However, this language is not contained on the July 31, 2008 invoice for $24,227.50, sent from King Fresh to Fresh-Pic.  (See Dkt. No. 69-1, Ex. 1; Dkt. No. 57-2, Ex. 1.)  Given that Plaintiffs have failed to argue why the 18% prejudgment interest rate (the legal maximum) should apply to the July 31, 2008 transaction, the Court finds that the proper interest rate for that transaction is the federal statutory prejudgment interest rate, which is 0.18% as of the date of entry of this order.[4]

Accordingly, the Court declines to award attorneys' fees and costs at this time, and orders that the parties shall address in their supplemental briefs the issue of prejudgment interest.  Specifically, Plaintiffs shall submit an amended amortization schedule (see Dkt. No. 57-1, Ex. 13), calculating prejudgment interest for each transaction on which the Court has awarded a recovery, and applying the corresponding appropriate interest rate.

VI.   Conclusion

For the reasons set forth above, the Court hereby ORDERS that Plaintiffs' motion for reconsideration is **GRANTED IN PART** and **DENIED IN PART**.  The motion for summary judgment (Doc. 57) against Defendants FRANK AVILA, KARINA SAUCEDO, FRESH-PIC PRODUCE COMPANY, INC., and MICHAEL A. ALMANZA (individually and doing business as PURA VIDA) is **GRANTED IN PART**.  The motion for a default judgment (Doc. 56) against Defendants FRESH CUT PRODUCE COMPANY and ROBERTO SALINAS is **GRANTED IN PART**.

The Court shall enter judgment in favor of Plaintiffs in the principal amounts set forth below.  The Court reserves the power to amend the judgment after resolving the attorneys'

---

[4] See 28 U.S.C. § 1961(a) ("Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."); Official Website of the Board of Governors of the Federal Reserve System, Selected Interest Rates (Daily) - H.15, http://www.federalreserve.gov/releases/h15/data.htm (locate row indicating U.S. government securities --> Treasury constant maturities --> 1-year, then follow "Weekly (Friday)" hyperlink).

fees and costs issue and the calculation of prejudgment interest. Accordingly, the Court ORDERS:

1. The Clerk shall enter judgment in favor of Plaintiff ALAN WEEKS, an individual doing business as K&W SALES and against Defendants FRANK AVILA, KARINA SAUCEDO, and FRESH-PIC PRODUCE COMPANY, INC., jointly and severally, in the principal amount of **$181,008.20**. The Court also finds that Plaintiff Weeks is entitled to prejudgment interest on this principal amount at a rate of 18% per annum, and attorneys' fees and costs, in an amount to be determined upon supplemental briefing.

2. The Clerk shall enter judgment in favor of Plaintiff K&W SALES and against Defendant MICHAEL A. ALMANZA (individually and doing business as PURA VIDA) in the principal amount of **$37,914.80**. The Court also finds that Plaintiff K&W Sales is entitled to prejudgment interest on this principal amount at a rate of 18% per annum, and attorneys' fees and costs, in an amount to be determined upon supplemental briefing.

3. The Clerk shall enter judgment in favor of Plaintiff KING FRESH PRODUCE, LLC, and against Defendants FRANK AVILA, KARINA SAUCEDO, and FRESH-PIC PRODUCE COMPANY, INC., jointly and severally, in the principal amount of **$24,227.50**. The Court also finds that Plaintiff King Fresh is entitled to prejudgment interest on this principal amount at a rate of 0.18% per annum, in an amount to be determined upon supplemental briefing.

4. The Clerk shall enter default judgment in favor of Plaintiffs ALAN WEEKS, an individual doing business as K&W SALES, and KING FRESH PRODUCE, LLC, against Defendants FRESH CUT PRODUCE COMPANY, a corporation, and ROBERTO SALINAS. The Court finds that Defendants Fresh Cut and Roberto Salinas are jointly and severally liable to Plaintiffs for all amounts owed by Defendants Frank Avila, Karina Saucedo, and Fresh-Pic (i.e. the total combined amounts set forth in paragraphs 1 and 3 above, including principal

amounts of **$181,008.20** and **$24,227.50**, in addition to prejudgment interest on those principal amounts and attorneys' fees and costs in an amount to be determined upon supplemental briefing).

5. All above-referenced amounts qualify for trust protection under the trust provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §499a *et seq.*

6. Finally, Plaintiffs shall submit their supplemental brief addressing the issues of (a) attorneys' fees and costs, and (b) calculation of prejudgment interest, on or before Friday, June 15, 2012. Defendants shall submit any opposition on or before Friday, June 19, 2012, and Plaintiffs shall submit any reply on or before Friday, July 4, 2012.

**IT IS SO ORDERED.**

DATED:  May 17, 2012

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court